UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
MARC ADLER, ROBERT COHEN, PETER FORSSTROM,
MICHAEL MCQUARY, and JONATHAN DAVIDOFF,

                              Plaintiffs,

            v.

UNITED STATES DEPARTMENT OF JUSTICE and
DOMINIKA TARCZYNSKA,

                             Defendants.
-------------------------------------------------------------------------------X

Case No.:

COMPLAINT

       Plaintiffs, Marc Adler ("Adler"), Robert Cohen ("Cohen"), Peter Forsstrom

("Forsstrom"), Michael McQuary ("McQuary") and Jonathan Davidoff ("Davidoff")

(collectively "Plaintiffs"), by their attorneys, the Davidoff Law Firm, PLLC, complaining of

Defendants the United States Department of Justice ("USDOJ") and Dominika Tarczynska

("Tarczynska") (collectively "Defendants"), alleges the following facts:

<u><b>SUMMARY OF ALLEGATIONS</b></u>

    1.  The Plaintiffs bring this action to challenge the denial of the Subpoena *Duces Tecum* (the

"Subpoena") served upon the United States Attorney's Office for the Southern District of New

York ("USAO SDNY"), pursuant to New York Civil Practice Law & Rules §3120 and the letter

pursuant to the USDOJ's *Touhy* Regulations (the "Touhy Letter"), in the New York Civil

Supreme Court case captioned: *Marc Adler, et. al v. David Molner et.al.*, Index No.:

154462/2017 (the "State Action"). *See* Subpoena and letter attached hereto as **Exhibits "A" and**

**"B".** The Defendants refused to produce any documents in response to the Subpoena, rather the

Defendants cited several statutes and regulations, none of which provide a legitimate and valid

basis to substantiate the Defendants' complete denial of every request in the Subpoena.

Specifically, this action seeks an order to require the Defendants to produce specific documents

requested in the Subpoena as they relate to Joseph Meli ("Meli") and David Molner ("Molner"),

who the USDOJ has previously either indicted or who has been identified in judicial proceedings as a cooperating witness for the Government.

2. As to this action, the Plaintiffs only seek the production of materials that would otherwise be required to be produced by other parties, but which may not or cannot be obtained from those other parties for various reasons, as discussed further in this Complaint.

3. Additionally, the materials sought by the Plaintiffs have already been identified by various parties in other actions and matters, and the Plaintiffs have reason to believe that such materials have been produced by the USDOJ in other actions, so that these materials are not otherwise confidential or secretive in that they would be protected under a claim of such classification.

4. Finally, the Plaintiffs are victims of Molner and Meli's conduct, for which Meli has already pled guilty to a felony charge in an action brought by the USDOJ (which sentencing is pending as of the filing of this Complaint), and Molner is a named witness (if not a cooperating witness) in related and unrelated criminal cases.

5. The State Action is an ongoing civil lawsuit by the Plaintiffs against Molner, Meli, Naomi Meckler (Molner's ex-wife), and Advance Entertainment, LLC ("Advance") seeking damages for the Plaintiffs' losses incurred as a result of Meli and Molner's fraud involving a large scale ticket scheme (described by the USDOJ as a Ponzi scheme in numerous indictments). The Plaintiffs have been named by the USDOJ as victims in the Meli criminal case, as well as potential witnesses in a related case that Molner is also identified as a witness relating to this fraudulent ticket scheme. *See* **Exhibit "C"[1]**.

---

[1] The attached victim letters were sent to the Davidoff Law Firm, PLLC, encompassing all of the Plaintiffs. The Davidoff Law Firm, PLLC represents the Plaintiffs in the State Action.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Telephone (212)-587-5971● Fax (212)-658-9852

6.   Meli and Molner were partners, as claimed by Molner, who recruited the Plaintiffs to execute contracts with Advance for $875,000.00 of investments into a ticket scheme to purchase and resell Adele concert tickets (the "Scheme"). *See* Second Amended Complaint in the State Action attached hereto as **Exhibit "D"**.    Meli and Molner took the Plaintiffs' funds from the Scheme and paid for their lavish lifestyles, including the purchase (or lease) of expensive cars, jewelry, vacations, to pay their rent and legal fees, etc.

7.   Even though Molner and Meli claimed that $15 million of tickets for the Adele concert series were being purchased, and Molner even claiming that the first tranche of tickets had been purchased, it is believed that less than $1.5 million of tickets were purchased even though tens of millions of dollars were collected by Molner and Meli in the fraud.  In fact, it is believed that Molner benefited in the amount of $400,000.00 directly as a result of just the Plaintiffs' funds. Thus, approximately half of the money that Plaintiffs wired to Advance in the fraud was diverted to Molner as his commission for the fraud.

8.   The State Action details Molner's relationship with the Plaintiffs, his recruitment of the Plaintiffs, the false statements he made to the Plaintiffs, and his involvement in the fraud.

9.   Specifically, the State Action alleges that Molner drafted and executed (using Meli's name and purported signature) the agreements between Advance and the Plaintiffs (the "Funding Agreements").  *See* Plaintiffs Funding Agreements attached hereto as **Exhibit "E"**.

10. However, since the State Action was filed, the Plaintiffs have discovered a vast amount of additional information, including email communications between Meli and Molner about the claims in the State Action, agreements between Advance and/or Meli and Molner and/or entities controlled by Molner, payments to Molner and/or for Molner's benefit from Advance and/or

Molner, fraudulent agreements and other materials that evidence Meli and Molner's fraudulent conduct that the Plaintiffs are victims of.

11. The Plaintiffs seek to obtain this evidence to support their claims against the defendants in the State Action, and have issued subpoenas, served Requests for Production, and sought the materials through other means, all without any success as Meli and Molner have refused to produce such and the Defendants also refuse to produce these materials, which there is no confidentiality or other privilege that can be asserted to prevent the Plaintiffs from obtaining. *See* **Exhibits "F" and "G"**, requests for production.

12. Meli pled guilty to a charge of securities fraud relating to the claims in the State Action and has asserted his Fifth Amendment right to remain silent, and Molner has asserted every excuse under the sun not to produce the materials requested of him, and in fact he even went as far as to interfere with the Plaintiffs' attempts at conducting non-party discovery.

13. On or about November 15, 2017, the Plaintiffs served the USDOJ with the Subpoena and the required letter explaining the basis for the request.

14. On or about January 2, 2018, the Defendants responded to the Subpoena by written correspondence wherein the subpoena was wholly rejected. *See* **Exhibit "H"**.

15. After reviewing the Touhy Letter in conjunction with the Subpoena, on or about January 23, 2018, the Defendants again responded to the Subpoena by written correspondence wherein the Subpoena was again wholly rejected.  *See* **Exhibit "I"**.   After several discussions between Plaintiffs' counsel and Tarczynska, the Plaintiffs offered to amend the Subpoena, tailoring and limiting their requests to meet the Defendants' apprehensions concerning disclosure of the documents sought by the Subpoena.  *See* **Exhibit "J"**.

16. However, on or about January 31, 2018, the Defendants again denied responding to the Subpoena in its entirety.  *See* **Exhibit "K".**

17. The Plaintiffs now seek a declaration that the Defendants' decision refusing to produce certain documents and materials requested in the Subpoena violated the Administrative Procedure Act because it was arbitrary and capricious.  The Plaintiffs further seek an order compelling the Defendants to respond to the Subpoena as permitted by law and to produce specific documents and materials requested herein.

## PARTIES

18. At all relevant times, Marc Adler was and is a resident of the State of Texas.

19. At all relevant times, Robert Cohen was and is a resident of the State of Georgia.

20. At all relevant times, Michael McQuary was and is a resident of the State of Georgia.

21. At all relevant times, Peter Forsstrom was and is a resident of the State of Georgia.

22. At all relevant times, Jonathan Davidoff was and is a resident of the State of New York, and he is the sole owner and managing member of JMD SEPT Quality Meats Miami, LLC, which is a limited liability company created under the laws of the State of Florida.

23. The United States Department of Justice is a Department of the Executive Branch of the United States Government, which includes the United States Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation.  The USDOJ is an agency within the meaning of 5 U.S.C. §552(f).

24. Dominika Tarczynska was and is at all relevant times, an Assistant United States Attorney working for and with the USAO SDNY.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as this is a civil action arising under federal law and involves a federal agency.

26. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §2201, as this is a civil action, seeking, in addition to other remedies, a declaratory judgment relating to a federal agency.

27. The Administrative Procedure Act ("APA") provides a waiver of sovereign immunity as well as a cause of action. 5 U.S.C. § 702.

28. The APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. §702.  The Defendants' refusal to produce any documents requested under the Subpoena adversely affects the Plaintiffs' ability to obtain documents and information that is necessary for the prosecution of the Plaintiffs' claims against the defendants in the State Action.

29. Venue is proper in this district pursuant to 28 U.S.C. §1391(e) (1), because a substantial part of the events giving rise to this claim occurred in the Southern District of New York.

## FACTUAL BACKGROUND

### A.  The State Action

30. Starting in early 2015 through January 2017, Molner, Meli and Advance perpetrated a clandestine fraud to lure Plaintiffs, and other investors, to invest in a fraudulent ticket-resale scheme, as described by the Government, a Ponzi like scheme.

31. Molner, in conjunction with Meli and Advance, represented to Plaintiffs that Advance's purpose was to purchase premier tickets to live events before tickets went on sale to the public, and then resell them to corporate clients, such as American Express, and brokers at a premium price.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Telephone (212)-587-5971● Fax (212)-658-9852

32. Molner initially approached Adler about investing in the Scheme specifically for the Grateful Dead reunion tour.

33. Molner encouraged Adler to refer his friends and associates to Molner.

34. Unbeknownst to Adler, Molner was being paid approximately 50% of the amounts that Molner was able to raise for the Scheme.

35. Molner always represented Meli as his "partner".

36. Davidoff and Forsstrom participated with Adler and several others in the Grateful Dead investment.

37. In late 2015 and early 2016, Molner promoted and solicited an investment in Adele tickets as part of the Scheme.  Molner suggested to the investors from the Grateful Dead deal to "roll" their investments into the Adele deal.

38. Forsstrom did indeed roll his investment from the Grateful Dead deal into the Adele investment, plus he added additional funds.

39. Davidoff and Adler withdrew their investments from the Grateful Dead deal, and reinvested plus added additional funds into the Adele deal.

40. Molner solicited Adler and Davidoff to introduce him to their friends for the Adele deal, which they did, including Cohen and McQuary.

41. All of the Plaintiffs invested their funds into the Scheme in or about February and March 2016, and did so based on statements that Molner provided to them.

42. The statements Molner made to induce the Plaintiffs to invest included claims that the first tranche of tickets had been purchased, that Advance executed an exclusive contract with Adele for the purchase of tickets, that insurance had been procured by him to protect the

Plaintiffs' investments, that he was an investor in the same transaction, that he was a strategic advisor to Advance, and other wholly knowingly false statements.

43. Molner claims as his defense in the State Action that he is a victim of Meli's fraud, just as much as the Plaintiffs.  However, it is believed upon information obtained by the Plaintiffs that some of the information that Molner provided to the Plaintiffs was never even obtained or discussed with Meli, but rather wholly fabricated by Molner.  Thus, Molner was perpetuating the fraud by concocting additional falsehoods in addition to those that Meli assisted Molner in transpiring.

44. For example, Molner created a PowerPoint presentation (in which Molner holds himself out as a strategic advisor to Advance) that sought to recruit additional investors (victims) in Atlanta that he desired Adler and Cohen to introduce him to.  This presentation was emailed to Cohen in anticipation of further investments.

45. Molner told several of the Plaintiffs that the Adele investment was highly sought after, and thus there was limited space for investors, so the Plaintiffs needed to act quickly on their commitments, which was untrue.

46. Molner told the Plaintiffs that there was a large international investor who took a large portion of the investment and thus the terms of the Adele investment were altered and differed from the Grateful Dead deal.

47. Molner claimed that the information he conveyed to the Plaintiffs, in most situations, was obtained from Meli, however Molner fabricated certain facts on his own.

48. Molner stated that no one would receive any funds from the Adele investment until such time that the Plaintiffs received their investment funds first, and then there was a detailed calculation on the distribution of these funds.  But, in fact, Molner received a portion of the

Plaintiffs' investment in the Adele transaction (thus such funds were not used to purchase tickets as Molner stated to the Plaintiffs), and such amount is believed to be approximately half of the Plaintiffs' total funds invested with Advance.  Furthermore, Molner did not disclose that he was being compensated by Advance and Meli for procuring the Plaintiffs' investments.

49. Finally, Molner stated to at least Davidoff and Adler that he was also an investor in the Adele investment, and told Adler that he invested on equal levels as the Plaintiffs, when indeed Molner did not make any financial investments in Advance or the Adele investment.

50. On September 1, 2016, in response to an inquiry by Davidoff concerning the investment, Molner responded that it was not going as well as "we" wanted and "[w]e started laying off the risk to a big corporate, so we'll do fine, but not the home run we wanted."  Two weeks later, Molner emailed Plaintiffs advising that demand and sales for tickets were not as anticipated, but that Meli procured a partnership with a major financial institution that regularly purchases ticket inventory for internal use and client entertainment. This statement is believed to have been fabricated by Molner, and outside any communications that Meli had with Molner.

51. On December 19, 2016, Molner told Plaintiffs that the Adele tickets were sold for a 20% return on invested principal and encouraged investors to roll their money into purchasing tickets for another purported deal – the theatrical musical: *Harry Potter and the Cursed Child* (the "Harry Potter Investment").  Molner stated, in an email, that Plaintiffs must let him know by the end of January (the time that Meli was arrested) if they desired to roll their Adele Investment funds into the Harry Potter Investment.

52. Davidoff and Molner communicated for several days prior to Meli's arrest about the Harry Potter Investment, and Molner claimed that he was in communication with Meli on Davidoff's questions relating to such opportunity.

53. On January 27, 2017, Plaintiffs learned that Meli was arrested and indicted on multiple criminal charges for securities and wire fraud for the ticket scheme, including the Adele investment, which is the case that Meli has pled guilty to a criminal count of securities fraud for soliciting investors with fabricated and false documents to lure them to invest in the Scheme.

54. After Meli's arrest, Molner immediately started to distance himself from Meli and Advance during his communications with the Plaintiffs, and Molner claimed Meli was separate from him and conducted this fraud on his own.

55. Molner then admitted to Plaintiffs that he received compensation in that he had personal expenses paid by Meli as well as he received advances in connection with his role for soliciting investors, including Plaintiffs, to invest in the Advance deals.

56. Throughout the entirety of the Scheme, Molner collaborated with Meli by knowingly making false representations about the Adele Investment (and the other deals), including the details of the investment (i.e., the contract with Adele, the amount of tickets that were intended to be and were actually purchased, timing of the purchase of tickets, when the tickets were sold, the amount of money that was collected from the sale of the few tickets that were purchased, insurance, etc.).

57. Molner also provided false and misleading material representations and documents to obtain the Plaintiffs' investments, including the Presentation, knowing that his materials and representations were false and intended to defraud the Plaintiffs.  In fact, after Meli was indicted, Molner admitted that he knew information that he obtained from Meli and provided to Plaintiffs was false, including the accounting he claimed to have obtained from Meli, which he refused to produce to Plaintiffs.  In fact, the Plaintiffs are in possession of a recording of Molner from a conference call Molner conducted with the Plaintiffs in which Molner admitted that financial and

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Telephone (212)-587-5971● Fax (212)-658-9852

accounting materials Molner provided to Plaintiffs in connection with the Scheme that he obtained from Meli were false and he knew they were false.

58. Molner also failed to disclose that the information provided to Plaintiffs to induce them to invest was based on false and fictitious calculations – even though he knew of the Scheme when he provided this information to the Plaintiffs prior to their investments.

59. Because Plaintiffs dealt entirely and directly with Molner, he knew that they relied on the material misrepresentations and documents that he presented to them when they agreed to make their investments, and he knew that he was holding himself out as a representative of Advance and as the one who had the information that they relied upon to make the decision to invest.

60. The Plaintiffs' investigation has also discovered that Molner drafted agreements, including the Funding Agreements and it is believed he drafted the agreements with Adele, that were used to perpetuate the fraud.

61. Because Meli and Molner are fraudsters and the ones whose communications and documents are needed to assist the Plaintiffs in proving their claims in the State Action, the Plaintiffs desire to obtain such materials from the Government to ensure that the Plaintiffs obtain the materials and the materials are not altered.  Otherwise, there is a strong likelihood that the Plaintiffs either never receive the materials or that the materials are produced altered or incomplete by Meli and/or Molner.

**B.  Plaintiff's Touhy Request and Subpoena on the USDOJ**

62. On or about November 15, 2017, Plaintiffs served the Subpoena in the State Action on the USAO SDNY.

63. Simultaneously, the Plaintiffs served the Touhy Letter on the USAO SDNY, detailing its request for the production of documents pursuant to *Touhy* and 28 U.S.C. §§16.21-16.26.

64. The Touhy Letter informed the USAO SDNY that the Plaintiffs were identified by the Government as victims in Meli's case, and that the Plaintiffs voluntarily cooperated with the USAO SDNY in its investigation of Meli and Advance, amongst others (including Molner). Further, the Touhy Letter informed the USAO SDNY of statements made by two Assistant United States Attorneys, Elisha Kobre and Brendan Quigley, to Honorable Colleen McMahon in a separate criminal action (*United States v. Craig Carton, et al*), that the USAO SDNY is in possession of a tremendous amount of materials relating to Meli and Molner involving the Scheme, particularly materials that are relevant to the Plaintiffs' claims against both Molner and Meli.   Additionally, the Government in the *Carton* action, specifically persuaded Judge McMahon to prohibit any discovery released in that case to be used in any other action, thus prohibiting such materials to be used in the State Action (even though such materials are wholly relevant to the Plaintiffs' claims in the State Action).

65. The Touhy Letter additionally informed the USAO SDNY of the Plaintiffs' knowledge that Molner met with members of its office to discuss the Scheme, and it is believed that Molner is cooperating with the prosecution of Meli and others to reduce his criminal exposure.  As such, the USAO SDNY is in possession of the materials that more than establish the civil liability of Meli and Molner in the State Action.

66. The Plaintiffs specifically requested the production of documents, including communications between Molner, Meli and possibly others, relevant to the State Action.

67. The sought after materials establish the Plaintiffs' claims against Meli and Molner in the State Action, and the information is not available to the Plaintiffs from any other source, as Meli, Molner and Advance have refused to produce such materials in discovery in the State Action

(even though the court has directed them to do so on numerous occasions)[2].  Furthermore, both Meli and Molner have no incentive to produce the materials as such establish their liability to the Plaintiffs.

68. The materials requested in the Subpoena are not classified, not related to an ongoing or active investigation, do not reveal state secrets, do no not reveal any confidential sources, nor are they privileged.  In fact, these materials have already been produced in Meli's criminal case as the case had proceeded towards the trial date, as well as it is believed that most if not all of these materials were also produced in the *Carton* action.

69. The Defendants' compulsion to comply with the Subpoena is warranted and proper, as assisting the Plaintiffs (who are victims) in their civil claims for fraud that is the same claims that the USAO SDNY and USDOJ deemed important enough to prosecute and issue press releases.

70. The materials sought are emails, contracts, letters, agreements, and other written and electronic documents that the Government obtained from Meli, Molner, and others, which otherwise would be subject to a subpoena or document request under the CPLR, and such parties would have a legal obligation to comply with and produce.

71. Despite knowing their legal and ethical obligations, on or about January 23, 2017, the Defendants refused to produce the requested materials to the Plaintiffs.  In the Denial Letter, the Defendants broadly and loosely cite to several grounds for their refusal to produce documents, none of which are availing, including the law enforcement privilege, grand jury secrecy, the privacy act and tax information, and undue burden.

72. Following receipt of the Denial Letter, the Plaintiffs made substantial efforts to amicably resolve this matter and limited their request of the Defendants by tailoring their requests in the

---

[2] Meli has asserted his Fifth Amendment Constitutional right against self-incrimination, and Molner just refuses to produce such materials.

Subpoena to only materials that were directly related to the Meli/Molner relationship involving the Grateful Dead Deal and the Adele Investment. Specifically, the Plaintiffs advised the Defendants that it would not seek production of materials relating to Craig Carton, Michael Wright or other investigations. In fact, the Plaintiffs merely desired the production of the communications between Meli and Molner, contracts, and other materials that were directly involving them and their deals. *See* **Exhibit "J"**.

73. Specifically, the Plaintiffs seek an order from the Court requiring the Defendants to produce the following materials:

a)  Any and all communications, including electronic communications, between Meli and Molner.

b)  Any and all communications, including electronic communications, between Meckler and Molner relating to any financial transfers, the Scheme, Meli, and Molner's financial affairs.

c)  Any and all communications, including electronic communications, between Molner and Alan Meckler relating to any financial transfers, Molner or his company's compensation from Advance or Meli, the Scheme, Meli, Molner's financial affairs, and investment opportunities.

d)  Any and all contracts and/or agreements relating to the Adele investment, Grateful Dead Deal, the Harry Potter Investment, and/or the Scheme.

e)  Any and all contracts and/or agreements relating to any and all compensation paid to Molner and/or any entity controlled or owned by him by Meli and/or Advance and/or any other entity controlled by Meli.

f)  Any and all agreements entered into between the Government and Molner.

g) Any and all agreements entered into between the Government and Meli.

h) Any and all documents relating to payments made to or on the behalf of Molner and/or any entity owned and/or controlled by Meli and/or Advance and/or an entity controlled by Meli.

i) Any and all agreements entered into between Meli and/or Advance with Molner and/or an entity controlled and/or owned by Molner.

j) Any and all documents that evidence the purchase of tickets by Meli, Molner, Advance and/or any person or entity controlled by Meli or Molner for any concert by Adele, the Grateful Dead tour, or the Harry Potter broadway show.

74. However, despite such concessions and limited requests, on January 31, 2018, the Defendants again informed the Plaintiffs in a third letter that no production would be made pursuant to the Subpoena. *See* **Exhibit "K"**.

75. All along, the USAO SDNY produced these materials in Meli's criminal case and the *Carton* action.

76. The Plaintiffs are able to overcome each and everyone one of the grounds for which the Defendants assert in their refusal to produce the materials sought pursuant to the Subpoena.

77. First, the Defendants assert the law enforcement privilege as grounds for their refusal to produce the materials sought by the Plaintiffs.  The Defendants cite to two cases in which there is ongoing litigation, *United States v. Simmons, et.al.*, 17 Crim 127 (KMW) and *United States v. Carton, et.al.*, 17 Crim. 680 (CM), that they claim may be affected by the disclosure of the information requested in the Subpoena.

78. This argument is a complete ruse.  In both of the cases cited by the Defendants, both cases are well beyond the investigative stage, and discovery was ordered in both prosecutions,

and in fact required to be completed in both matters.  In fact, the Defendants admit in the Denial Letter that both defendants in the *Simmons* action have already pled guilty.  It is believed that the materials requested in the Subpoena, much of which is Meli and Molner's own emails that were obtained from their email accounts and documents also obtained from the same, that such was produced in both of these cases.

79. Moreover, the Defendants failed to meet their burden as the party asserting the law enforcement privilege, because they are unable to establish that the privilege applies to the documents requested by the Plaintiffs. *See Dinler v. City of New York (In re City of New York),* 607 F.3d 923, 944 (2d Cir. 2010).  In their letters refusing to produce any documents pursuant to the Subpoena, the Defendants simply state that the information sought in the Subpoena would reveal investigative records compiled in connection with the Meli criminal case and *Carton* matter, as well as other potential ongoing investigations.  *See* **Exhibit "I".**

80. Such a conclusory statement does not satisfy the Defendants' burden of showing that the documents sought by the Subpoena contain information that the law enforcement privilege is intended to protect. *See Dinler*, 607 F.3d at 944.  Such protected information includes information pertaining to "law enforcement techniques and procedures," information that would undermine "the confidentiality of sources," information that would endanger "witness and law enforcement personnel [or] the privacy of individuals involved in an investigation," and information that would "otherwise . . . interfere with an investigation. *Id*.  The Defendants' statements regarding the applicability of the law enforcement privilege are a far cry from providing such details.

81. Further, even if the Court determines that the law enforcement privilege applies to some of the documents sought in the Subpoena, the presumption may be overcome by the

showing:"(1) that its suit is "non-frivolous and brought in good faith," (2) that "the information sought is [not] available through other discovery or from other sources," and (3) that the information sought is "importan[t]" to the party's case. *Id.*

82. First, as to the State Action, the facts enumerated in the Second Amended Complaint evidence that the State Action is certainly not frivolous and was brought in good faith after the Plaintiffs were defrauded by Meli, Molner and Advance.  Second, the information sought by the Subpoena is not available through other discovery means or from other sources.  The Plaintiffs have issued subpoenas, served Requests for Production, and sought the material through other means, as well as Meli and Molner have refused to produce the requested materials.  The Plaintiffs certainly cannot be forced to rely on these two fraudsters, Meli and Molner, to produce the documents detailing their fraudulent scheme, and not to destroy and/or alter such evidence.  Third, the information sought in the Subpoena is necessary to the State Action as it is required by the Plaintiffs to establish their claims against the Defendants and to potentially recover their investments that were stolen from them by Meli and Molner through their fraud.

83. Next, the Defendants assert Grand Jury secrecy as a basis for their refusal to produce materials pursuant to the Subpoena.  The Denial Letter details the standards and regulations that courts have articulated for invoking the privilege. ("The DOJ *Touhy* regulations further provide that disclosure will not be made when '[d]isclosure would violate…a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e).' 28 C.F.R. § 16.26(b)(1)" *See* **Exhibit "I"**).  F.R.Cr.P. 6(e) states that, "Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury…(vi) an attorney for the government."

84. However, the Denial Letter fails to specify that even a single grand jury hearing that is currently proceeding would prohibit the Defendants from responding to the Subpoena.

Moreover, the Subpoena requests documents substantially relating to Meli and Molner, both of whom have already had these materials produced in both the *Simmons* and *Carton* matters, which are both well beyond the grand jury stage of their respective proceedings.  Additional disclosure in the State Action of these materials would not taint or create any issues with respect to any other Grand Jury proceedings that the Defendants may decide to proceed with in the future, as such materials have already been divulged to the defendants in their respective criminal cases.

85. Next, the Defendants assert grounds of the Privacy Act and Tax Information for their non-production of the materials pursuant to the Subpoena.  Following the receipt of the Denial Letter, the Plaintiffs communicated with the Defendants and limited their requests so as to exclude any materials that would involve any financial records (i.e. tax returns, bank statements, etc.), so as to rectify this concern that the Defendants have.  However, the Defendants continued their refusal.  Like the Defendants rationale under the Grand Jury secrecy privilege, the Defendants cite to several statutes regarding the Privacy Act of 1974 and applicable tax statutes, but provide no details as to why such apply in the case of the Plaintiffs and the Subpoena. Additionally, the Plaintiffs can request a confidentiality order be issued in the State Action to limit the release of these materials, if such were produced.

86. The final basis for the Defendants refusal to produce the materials sought in the Subpoena is undue burden.  The Defendants claim that responding to the Subpoena would impose an undue burden on the Defendants.  Even though the Defendants admit that they are in possession of the materials requested relating to Meli and Molner, they claim that to "identify all privileged and statutorily protected information in this Office's investigatory files would be an incredibly burdensome task…"   This argument should not be afforded any merit and is certainly

not a persuasive rationale for the Defendants' refusal to comply with the Subpoena, as the Defendants and the USAO SDNY have previously organized discovery in both the *Simmons* and *Carton* cases for not only discovery purposes, but also for presentation to the respective grand juries and for merely preparing for the presentation of the case for prosecution consideration.  Of course the Defendants have a detailed list of the materials they have, and such materials have been provided in an organized manner to the defendants in both cases (i.e. emails from Molner's account, emails from Meli's account, bank statements from Republic Bank relating to Ajax Entertainment, LLC, bank statements from JP Morgan Chase relating to Advance, etc.).

## AS AND FOR THE CAUSE OF ACTION
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

87. Plaintiffs repeat and reallege paragraphs 1 through 86 above as if fully set forth fully herein.

88. The Plaintiffs have been aggrieved by an agency  action (to wit the Defendants refusal to produce documents pursuant to the Subpoena) under the Administrative Procedure Act, 5 U.S.C. §§701 et seq.

89. The Subpoena and the Touhy Letter establish the Plaintiffs' entitlement to the documentation and information requested in the Subpoena.

90. The Denial Letter and Second Denial Letter, articulating the Defendants rationale for failing to produce the materials requested pursuant to the Subpoena, details several meritless basis, privileges and statutes that may be invoked by the Defendants.  However, these denial letters wholly fail to articulate any legitimate and valid basis for the Defendants' refusal to produce the materials requested.

91. The Defendants' grounds for the refusal detailed in the Denial Letter and Second Denial Letter were not based on the consideration of relevant factors, and, thus constitute a clear error of judgment on behalf of the Defendants in failing to produce the materials sough in the Subpoena.

92. The Defendants refusal to produce the materials sought in the Subpoena was both arbitrary and capricious, as the Defendants relied on factors not intended to be considered in rendering such decision, entirely failed to consider important aspects of the Subpoena and the State Action, were frivolous and meritless grounds for such decision, and offered no valid explanation for their decision as such runs counter to the evidence offered by the Plaintiffs.

93. The Defendants failed to act in conformity with their obligations and administer the provisions of 28 U.S.C. §§16.21-16.28 in conformance with the intent of such law.

94. The Defendants acted arbitrarily, capriciously and contrary to law in violation of the Administrative Procedure Act by refusing to comply with the Subpoena and produce such materials sought by the Plaintiffs.

95. The Plaintiffs have exhausted all administrative remedies available to them as of right.

96. The Plaintiffs have no other recourse to judicial review other than this action.


WHEREFORE, Plaintiffs pray that this Court:

A. Declare Defendants refusal to produce the materials requested in the Subpoena (As amended pursuant to the communications with the Defendants) to be in violation of the Administrative Procedure Act.

B. Order the Defendants respond to the Subpoena by producing the requested materials as amended by the communications with the Plaintiffs;

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Telephone (212)-587-5971● Fax (212)-658-9852

C.  Grant attorneys' fees and costs pursuant to 28 U.S.C. §2412, 28 U.S.C. §1920, Fed. R.

Civ. P. 54 (d) and other authority; and

D.  Grant any other relief the Court deems appropriate and just.


## <u>RESERVATION OF RIGHT TO AMEND PLEADINGS</u>

Plaintiff reserves the right to amend these pleadings to add any and all claims that it

determines are just and appropriate.

Dated: New York, New York
       March 12, 2018

DAVIDOFF LAW FIRM, PLLC

By : _____/JMD/_____
       Jonathan Marc Davidoff, Esq. (#JD9157)
       *Attorneys for Plaintiffs*
       228 East 45th Street, Suite 1700
       New York, New York 10017
       Tel:  212-587-5971
       Fax:  212-658-9852
       Email:  jonathan@davidofflawfirm.com
       Secondary Email:  Efile@davidofflawfirm.com



CAITLIN ROBIN AND ASSOCIATES

By: _____/CR/_____
       Caitlin Robin, Esq.
       *Attorneys for Plaintiffs Marc Adler,*
       *Robert Cohen and Peter Forsstrom.*
       30 Broad Street
       Suite 702
       New York, New York 10004
       Tel:  (646) 524 - 6026
       Email:  caitlin@robinandassociates.com