UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/24/18

-------------------------------------------------------X

MARC ADLER, ROBERT COHEN, PETER
FORSSTROM, MICHAEL MCQUARY, and
JONATHAN DAVIDOFF,

         *Plaintiffs*,

   -*against*-

UNITED STATES DEPARTMENT OF
JUSTICE and DOMINIKIA TARCZYNSKA,

         *Defendants*.

-------------------------------------------------------X

18 Civ. 2188 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiffs in this action are plaintiffs in a New York State Supreme Court action alleging that they have been swindled by certain individuals who are subject to ongoing criminal prosecution here in the Southern District of New York involving the same conduct being challenged in the state court action. Frustrated by the lack of success in obtaining discovery in the state court proceeding, on November 15, 2017, Plaintiffs subpoenaed the government's files in the criminal investigation.

    The U.S. Attorney's Office wrote to the Plaintiffs on January 2, 23, and 28. The government pointed out that the federal government was not subject to state subpoenas, but nonetheless considered the document request under the *Touhy* regulations, which govern whether documents possessed by the government should be disclosed in lawsuits in which the government is not a party. When the government refused to produce any documents, Plaintiffs commenced this action alleging that the government's refusal to produce the

requested documents was arbitrary and capricious and thus violates the Administrative Procedure Act.

This is Plaintiffs' third attempt to obtain records in federal court. *First*, when Plaintiff Davidoff sought to limit a protective order while briefly representing a defendant in *United States v. Carton*, 17 Cr. 680 (CM) (S.D.N.Y. Sept. 5, 2017), Chief Judge McMahon stated: "I will not allow any document that you get in this case to be used in that lawsuit. . . . You cannot use those documents in that case. You cannot file those documents in that case. . . . You cannot do it. This is not discovery in your state case."[1] (ECF No. 19 Ex. L at 1.) *Second*, Judge Wood rejected Plaintiffs' attempt to modify the protective order so that documents could be released in *United States v. Simmons et al.*, 17 Cr. 127 (KMW) (S.D.N.Y. Jan. 26, 2017) and used in the state proceeding. (ECF No. 19 at K.) Plaintiffs now turn to this Court to seek a declaratory judgment and enforcement of their subpoena.

After careful review and analysis of the pleadings, the Court determines that the government complied with the *Touhy* regulations in considering Plaintiffs' request. Its actions were neither arbitrary nor capricious. There is no basis for the APA claim and accordingly it is denied.

\* \* \*

Plaintiffs Marc Adler, Robert Cohen, Peter Forsstrom, Michael McQuary, and Jonathan Davidoff bring this action to challenge the refusal of United States Department of Justice and Assistant U.S. Attorney Dominikia Tarczynska to produce documents and

---

[1] Plaintiffs dispute the relevance of this quote. (*See* ECF No. 19 Ex. N at 4.)

2

materials in response to a subpoena *duces tecum* (the "subpoena"). They assert that the refusal was arbitrary and capricious and violated the Administrative Procedure Act ("APA"). Plaintiffs seek (1) a declaratory judgment that Defendants violated the APA, (2) an order compelling Defendants to comply with the subpoena (as amended pursuant to communications between the parties), and (3) attorneys' fees and costs. The United States asserts that Tarczynska is not a proper defendant in this suit, and moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint.

For the reasons set forth below, the motion to dismiss is GRANTED.

## BACKGROUND

For the purpose of deciding Defendants' motion to dismiss, the Court accepts all of Plaintiffs' allegations as true.

Plaintiffs in this action are also plaintiffs in a civil action pending in New York Supreme Court (the "State Action") against several individuals, including David Molner and Joseph Meli, who are subject to ongoing criminal proceedings in the Southern District of New York. (*See* ECF No. 5; ECF No. 1, Ex. 4.) Plaintiffs allege in the State Action that they were victims of a fraudulent ticket resale scheme (the "Scheme") devised by Molner and Meli, in which Plaintiffs invested $400,000 in a scheme to purchase and resell tickets to concerts (*i.e.* Grateful Dead, Adele) and were solicited to roll their prior investment into a Broadway show (*i.e.* Harry Potter and the Cursed Child). (*See id.*) Plaintiffs claim, however, that their investments were based on false and misleading representations and were predominantly diverted to pay for Meli and Molner's "lavish lifestyles." (*See* ECF No. 5 ¶¶ 6–7, 30–52; ECF No. 1, Ex. B at 2.)

The Scheme is also the subject of multiple criminal proceedings in the Southern District of New York. In support of their State Action claim, Plaintiffs seek discovery of documents in the possession of the U.S. Attorney which were gathered in connection with the federal prosecutions. They seek these documents to bolster their position in the State Action.

On November 15, 2017, Plaintiffs issued the subpoena to the U.S. Attorney's Office, requesting eighteen broad categories of documents for a four-year period from January 1, 2014 through November 15, 2017. Generally the documents requested focus on the activity of two individuals, Meli and Molner. Meli has pled guilty and according to Plaintiff, Molner is a government cooperator. Other cases in the ongoing federal investigation and prosecution will be tried in October 2018.

Plaintiffs explained the basis for the subpoena in a letter to the U.S. Attorney's Office ("*Touhy* Letter"), (ECF No. 1, Ex. B): the government "is in possession of a tremendous amount of materials relating to Meli and Molner involving the Scheme, particularly materials that are relevant to the Plaintiffs' claims against both Molner and Meli," which Plaintiffs need "to substantiate the claims of, *inter alia*, fraud, fraud in the inducement, unjust enrichment, misrepresentation and negligence against Meli and Molner relating to the Scheme." (*Id.* at 1–2.) Plaintiffs state that they seek these materials from the government because they "are not available from other sources and/or it is highly likely if not almost a certainty that [they] have been destroyed or will be concealed by others to prevent the Plaintiffs from obtaining them." (*Id.* at 2.)

On January 23, 2018, the government declined to produce any documents in response to the subpoena, citing the law enforcement privilege, grand jury secrecy, the Privacy Act of

4

1974, confidential tax information, and undue burden. (*Id.* Ex. I.) On January 31, 2018, the government refused to produce documents in response to a narrowed *Touhy* request, (*see id.*, Ex. J), stating that the requested information would still "implicate investigative files related to *United States v. Simmons, et al.*, 17 Crim. 127 (KMW), or other potential ongoing investigations" and would involve "documents . . . subject to protective orders in the criminal matters restricting their distribution," (*id.*, Ex. K at 1.)

Plaintiffs commenced their declaratory judgment action on March 13, 2018.

## DISCUSSION

### I. Legal Standards

#### A. Motion to Dismiss

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* The Court need not accept as true, "legal conclusions, deductions[,] or opinions couched as factual allegations." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

At the motion to dismiss stage, the court "assess[es] the legal feasibility of the complaint," but does not "assay the weight of the evidence which might be offered in support

5

thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011). "When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the Complaint as exhibits or incorporated in it by reference." *Fraser v. Fiduciary Tr. Co. Int'l*, 417 F. Supp. 2d 310, 317 (S.D.N.Y. 2006) (Crotty, J.) (citing *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

### B. *Touhy* Regulations

Under the "Housekeeping Statute," a federal agency may prescribe regulations to govern responses to requests for documents or testimony served on the agency or its employees. *See* 5 U.S.C. § 301; *Touhy v. Ragen*, 340 U.S. 462, 468 (1951). Accordingly, the DOJ established regulations for determining how to respond to a demand for production or disclosure in which the government is not a party. In relevant part, 28 C.F.R. § 16.26(b) includes a prohibition against disclosure when it would, *inter alia*, "violate a statute, such as the income tax laws . . . [or] a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e)," *id.* at 1, or "reveal investigative records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired," *id.* at 6.

### C. Administrative Procedure Act

The federal government waived sovereign immunity with respect to federal courts' review of final agency action by enacting the APA. *Wultz v. Bank of China Ltd.*, 61 F. Supp. 3d 272, 278 (S.D.N.Y. 2013) (quoting *In re S.E.C. ex rel. Glotzer*, 374 F.3d 184, 190 (2d Cir. 2004)). Under the APA, a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in

6

accordance with law." 5 U.S.C. § 706(2)(A). In evaluating whether an agency's action is arbitrary or capricious under the APA, a court must "determine whether the agency has 'considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action.'" *Residents for Sane Trash Solutions, Inc. v. U.S. Army Corps of Engineers*, 31 F. Supp. 3d 571, 588 (S.D.N.Y. 2014) (Crotty, J.) (quoting *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000)). This determination "does not permit a court to 'weigh the evidence or substitute its judgment for that of the agency.'" *Watsontown Trucking Co. v. U.S. Dep't of Labor*, No. 16 CIV. 9166 (KPF), 2018 WL 456300, at *4 (S.D.N.Y. Jan. 17, 2018) (quoting *Islander East Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 150 (2d Cir. 2008)). Rather, "[t]his standard of review is highly deferential and presumes the agency's action to be valid." *Residents for Sane Trash Solutions, Inc.*, 31 F. Supp. 3d at 588.

## II. Analysis

### A. Proper Standard

The Second Circuit has not decided whether the "arbitrary and capricious" standard of the APA is the appropriate standard of review to apply to a final agency decision regarding a discovery request, *see U.S. E.P.A. v. Gen. Elec. Co.*, 212 F.3d 689 (2d Cir. 2000) (withdrawing district court's holding regarding appropriate standard); *see also Wultz*, 61 F. Supp. 3d at 280–81 & n.23 (acknowledging lack of established standard), leaving open the possibility that the correct standard is instead that "set forth in Rule 45 of the Federal Rules of Civil Procedure," *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 458 (E.D.N.Y. 2011).

But Plaintiffs here rely solely on the APA and not Rule 45, (*see* ECF No. 5 ¶¶ 87–96). The Plaintiffs' complaint alleges that the Defendants have acted arbitrarily and capriciously. Accordingly, the Court evaluates the government's actions using the "arbitrary and capricious" standard of § 706 of the APA. *See Watsontown Trucking Co.*, 2018 WL 456300, at n.2 (considering action filed under APA under § 706 rather than Rule 45); *Portaleos v. Shannon*, No. 5:12-CV-1359 LEK/TWD, 2013 WL 4483075, at *4 (N.D.N.Y. Aug. 19, 2013) ("Where, as here, the subpoena was issued during state-court litigation, however, § 706 is the proper standard.).

The government set forth the standards and precisely followed the procedures laid out in the *Touhy* Regulations in analyzing whether to comply with the document demand, and Plaintiffs do not allege otherwise. The government expressed the view that "it appears that the . . . Plaintiffs are seeking this Office's entire investigatory file with respect to Molner, Meli and the Scheme alleged in the criminal complaint against Meli," and declined to authorize the release of documents based on legitimate concerns—(1) law enforcement privilege, (2) grand jury secrecy, (3) Privacy Act and tax information, and (4) undue burden. (ECF No. 1, Ex. I at 3–5.) This is not arbitrary and capricious conduct.

### B. Law Enforcement Privilege and Grand Jury Secrecy

Specifically, the government determined that many of the documents sought were subject to the law enforcement privilege and/or grand jury secrecy, because they "would reveal investigative records compiled in connection with the following ongoing criminal matters: *United States v. Simmons, et al.*, 17 Crim. 127 (KMW), and *United States v. Carton, et al.*, 17 Crim. 680 (CM), as well as other potential ongoing investigations that have not yet resulted in

criminal indictments." (ECF No. 1, Ex. I at 4.) The government also noted that the desired information would "interfere with these law enforcement proceedings and intrude upon the privacy of individuals involved in the criminal investigation," that the need for this information did not "outweigh the public interest in nondisclosure," and that "Plaintiffs have additional avenues available to them to discover the requested information." (*Id.* (internal quotation marks and citations omitted).)

After careful review, nothing in the record shows that Defendants "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Watsontown Trucking Co.*, 2018 WL 456300, at *4 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Indeed, the record demonstrates that the government "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action," *Residents for Sane Trash Solutions, Inc.*, 31 F. Supp. 3d at 58.

Plaintiffs argue that these protections should not apply, because the criminal proceedings are past the grand jury stage and/or nearing sentencing and the government has not specifically identified the information that could undermine law enforcement. (ECF No. 19 at 17–18.) There is no requirement that the government do so. Further, one case has yet to be tried, there may be appeals and the investigation is said to be continuing. In these circumstances, there is no basis for Plaintiffs' assertion that the law enforcement privilege and grand jury secrecy could no longer be implicated in *Simmons* once guilty pleas were entered. *See In re The City of New York*,

607 F.3d 923, 944 (2d Cir. 2010) ("An investigation . . . need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public."). Plaintiffs do not address the law enforcement and grand jury secrecy needs in *Carton* and other potential ongoing investigations. *See id.* (law enforcement privilege applies to information (1) "pertaining to law enforcement techniques and procedures," (2) "that would undermine the confidentiality of sources," (3) "that would endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation," and (4) "that would otherwise . . . interfere with an investigation") (internal quotation marks and citation omitted). Further, the text of the subpoena clearly requests "Investigative Reports," which Plaintiffs define as "any and all Documents, notes, audio recordings, and Communications that relate to any investigation into the Scheme, Meli, Molner, or any other person believed to be involved in any criminal conduct relating to the Indictment or the claims in the Amended Complaint that were prepared by any member of the FBI, DOJ, and or Your office." (ECF No. 1, Ex. A at 7.) Given Plaintiffs' definition of the requested documents, law enforcement privilege and/or grand jury secrecy are plainly applicable.

Plaintiffs also argue that even if the law enforcement privilege applies, they can overcome the "strong presumption against disclosure" based on a three-part showing of compelling need. *See In re City of New York*, 607 F.3d at 945 & n.23. They assert that: (1) their suit is not frivolous, because facts presented in the State Action show that Plaintiffs were defrauded, (2) the information is not available through discovery or other sources, and (3) the evidence is required for Plaintiffs to succeed in the State Action. (ECF No. 5 ¶ 82.) The Court

does not agree, but even if it did, it would not mean that it was arbitrary and capricious for the government to withhold documents based on the law enforcement privilege.[2]

Plaintiffs also argue that the government acted arbitrarily and capriciously in (1) allowing Meli and his co-defendants in the criminal proceedings to use the Discovery in their defense in related SEC matters, and (2) allowing the government to produce the Discovery to the SEC. (ECF No. 19 at 14.) But production to the SEC was explicitly *permitted* under the terms of the protective orders in the federal proceeding. This has nothing to do with whether the government acted in an arbitrary and capricious manner in refusing to make a production that would *violate* those protective orders in response to Plaintiffs' *Touhy* request. Plaintiffs allege that the government was arbitrary and capricious in responding to their third party *Touhy* request, not that the government was arbitrary and capricious in entering the protective orders—which by their terms permitted the parties' disclosure to the SEC. If Plaintiffs are seeking an equal footing with the SEC under the protective orders, this dispute has already been adjudicated by Judge Wood, who denied Plaintiffs' proposed modification to the protective order in the *Simmons* matter on April 12, 2018. (ECF No. 19, Exs. K, M.)

### C.  Tax Information and Undue Burden

According to the government, some documents requested would also reveal sensitive tax information in violation of federal law and the *Touhy* Regulations, *see* 5 U.S.C. 552a(b) (agencies generally may not disclose an individual's records to any person or another agency

---

[2]  It is worth noting that Plaintiffs can obtain the documents sought through the civil discovery process: the government has stated that it has made available, for example, a forensic copy of Meli's phone, which it does not consider covered by the protective order in the *Simmons* case, and which can be produced to Plaintiffs. (ECF No. 16 at 9–10 n. 2.)

11

without prior written consent); 28 C.F.R. § 16.26(b)(1) (disclosure will not be made when it "would violate a statute, such as the income tax laws"), or would impose an undue burden on the government. Plaintiffs argue that these bases are arbitrary and capricious, because Plaintiffs have rescinded their requests for materials that would involve any financial records, (ECF No. 19 at 20), and there would be no burden on the government to re-produce documents that have already been produced to Meli and his co-defendant in the criminal proceedings, (*id.* at 21). The *Touhy* Regulations, however, explicitly reference that disclosure will not be made when it "would violate a statute, such as the income tax laws," 28 C.F.R. § 16.26(b)(1), but it is clear that is precisely what the subpoena seeks: bank statements and tax and accounting materials for Meli and Molner. (*See, e.g.*, ECF No. 1 Ex. A at 12 ¶¶ 1, 2, 4.) Further, Plaintiffs' argument—that the government was arbitrary and capricious in this denial because Plaintiffs later offered to withdraw its requests for these documents—is inapposite. On the contrary, the Plaintiffs' withdrawal shows that Plaintiffs either do not need these documents or recognize that it would be improper for the government to produce them, which supports the government's argument that to withhold the documents was not arbitrary and capricious.

Finally, while "undue burden" is not a factor listed in the *Touhy* Regulations, Plaintiffs provide no factual support for their assertion that consideration of this factor would be arbitrary and capricious. Plaintiffs claim that the government surely has a "detailed list" of relevant materials that have already been provided to defendants in the criminal proceedings. (ECF No. 1, Ex. I at 5.) These are merely opinions couched as factual allegations. Plaintiffs fail to support their position that it would not be unduly burdensome for the government to respond to their subpoena with any facts. *See In re NYSE Specialists Sec. Litig.*, 503 F.3d at 95 (court need not

accept as true "legal conclusions, deductions[,] or opinions couched as factual allegations").

* * *

Plaintiffs are in the wrong forum and are using the wrong discovery device. The appropriate forum to resolve their disputes is the New York state court system where the underlying action was filed, not in the third federal courtroom to which Plaintiffs now turn in an effort to try to obtain protected investigatory files.

This Court need not answer whether Tarczynska is a proper defendant in this suit, because the Court is granting Defendants' 12(b)(6) motion to dismiss on all claims. But it is clear that the Assistant U.S. Attorney is not a proper defendant, and she cannot be a party to this case.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss in its entirety. The Clerk is directed to terminate the action.

Dated: New York, New York
September 24, 2018

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge